## W. D. GLEGHORNE v. SARAH I. GLEGHORNE.

APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 8, 1887—Decided January 3, 1888.

A bill in equity was filed by a wife against her husband to recover a sum of money expended by her to aid in the erection of a dwelling for their home upon real estate purchased by him. The answer averred that the money was given the respondent with no agreement, contract or understanding that it was to be repaid, returned or secured : *Held,*

1. That the averment was responsive to the bill, and was within the rule that to overcome it there must be the testimony of two witnesses or of one witness and corroborative circumstances the equivalent of another.

2. That when a wife's money is received by the husband and appropriated by him at her request towards the building of a dwelling-house for a common home, without circumstances indicating the relation of debtor and creditor, the wife may not reclaim the money by a subsequent proceeding against the husband : Johnston v. Johnston, 31 Pa. 450, followed.

3. Whether there is jurisdiction in equity of a bill filed by a wife to recover an alleged loan of her separate estate to her husband, not decided.

Before GORDON, C. J., PAXSON, STERRETT and WILLIAMS, JJ.; TRUNKEY, GREEN and CLARK, JJ., absent.

No. 254 October Term 1887, Sup. Ct.; court below, No. 168 December Term 1886, C. P. No. 1, in equity.

On October 4, 1886, Sarah I. Gleghorne, by her next friend, Samuel Perry, filed a bill in equity against her husband, W. D. Gleghorne, charging:

That the plaintiff and defendant were married on October 20, 1884, and that before that date the defendant had purchased a lot of ground in the 28th ward, Pittsburgh, but had not paid the purchase money nor received a deed therefor; that after their marriage they at once proceeded to erect a brick dwelling-house and other improvements upon said lot, and subsequently furnished the same and had lived therein; "that in paying for said lot and erecting said dwelling-house thereon, the complainant expended out of her own money not

derived from her husband, the same having come to her from her mother's estate, the sum of $1,500, and in addition thereto she had expended the sum of $500 in furnishing said house, said sum also being her own money derived from her mother's estate; " that the deed for said premises had been made and taken in the name of the defendant, though he had not paid much over one half of the cost of said property, and no security whatever was given the plaintiff for her money; that the defendant had become addicted to habits of drinking, had lost his situation, was contributing nothing to the support of the plaintiff and her two children, and had threatened to encumber the said property against the protest of the plaintiff, for no purpose but to gratify his appetite for drink; praying for an injunction to restrain the defendant from in any way encumbering the property and for a decree ascertaining the plaintiff's interest therein and securing the same to her by deed or mortgage, and for further relief.

The part of the answer material to the questions decided in this case, was as follows:

4. That the purchase money of the said lot of ground amounted to the sum of $1,259.00, which was paid by the respondent out of his own funds. That the cost of the erection of the said house thereon was $2,500.00, and the same was paid by the respondent out of his own funds except the sum of $771.37. That a judgment was obtained against said respondent for $771.37, after the completion of the said house; and the complainant on June 24th, 1875, gave the respondent $800.00, with which he, the respondent, paid or liquidated said judgment. But at the time said $800.00 was given to him there was no agreement, contract or understanding between the complainant and the respondent that he was to repay or return said money or secure the same in any way. The respondent avers that the said amount of $800.00 was given to him, the respondent, by the complainant. The complainant did expend about $400.00 in purchasing household furniture, when the complainant and respondent commenced to live together as husband and wife, but the respondent does not claim any of such goods so purchased.

The cause having been put at issue, *Mr. I. P. Hays* was ap-

pointed examiner and master, who reported inter alia as follows:

The complainant and respondent were married on October 20, 1874. The respondent, by agreement on April 4, 1874, purchased the lot of ground mentioned in the bill and answer, for which he paid the sum of $1,259, out of his own money. He then entered into a contract with A. T. Millen, for the construction of the improvements mentioned in the bill and answer. The house was commenced in the fall of 1874 and completed about the first of June, 1875; before its completion however, on about the middle of March, 1875, the respondent, with his wife and children, removed into this house, where they continued to live until about the first of March, 1887. The house and other improvements put upon said lot of ground cost about $2,500. The deed for the said premises purports to have been executed by Thomas Mellon and wife to Wm. D. Gleghorne, the respondent, on September 17, 1877, but was not delivered until October 4, 1882, and recorded on February 4, 1887, in deed book, vol. 558, page 324. There is also a deed in evidence for a strip of ground six inches in width adjoining said described lot, and extending the same depth thereof, from Mrs. Phœbe M. McKean to Wm. D. Gleghorne, dated January 10, 1887, and recorded in vol. 546, page 361. The complainant " broke up housekeeping" and went to live with her sister, Mrs. Perry, on the first of March, 1887, which, she contends, she was justified in doing, by reason of the respondent's excessive use of liquor, his ill treatment of her and his cross, violent temper. Upon this ground, in connection with the neglect upon his part to support her, it is claimed that the complainant has the right to maintain an action for the recovery of her separate property from her husband, under § 3, act of April 11, 1856, P. L. 315. There is abundant evidence of the respondent's habit of drunkenness for a considerable time prior to filing the bill in this case. This seems to have been the cause of him having been discharged from his employment in July, 1886. And the cause, also, of the harsh and severe treatment of his wife. . . . . . .

From all the evidence before the master, he is brought to the conclusion, that the complainant had a right to maintain an action for the recovery of her separate property. The un-

contradicted testimony in this case is, that the respondent has neglected to contribute anything towards the support of the complainant since August 1, 1886.

The learned counsel for the respondent contended in his argument before the master, after hearing all the testimony, that this bill shall be dismissed for want of jurisdiction, and that the proper remedy is an action at law.

There was no objection to the jurisdiction raised in the pleadings, and the master is therefore of opinion that the question of jurisdiction in this case cannot be entertained so as to allow the objection to prevail, after the parties have volunteered to proceed to a hearing on the merits: Adams's App. 113 Pa. 449; Story's Eq. J., § 464; Bank v. Adams, 1 Pars. 534.

The next question which presents itself is entirely one of fact, to ascertain the sum of money the respondent received from the complainant. She contends that she paid him fifteen hundred dollars of her own money, which he used toward the payment of the improvements admitted to have been made on the premises described in the bill and answer. Of this sum the respondent admits having received eight hundred dollars, but denies that she paid him any more. All the money the complainant claims, was her own, having been paid to her out of her mother's estate ; this fact is not controverted.

The complainant testified that in May, 1875, she received from her mother's estate $800. That at the same time she received from Samuel Perry $400, at which time she paid both sums to the respondent; that some time before this she also paid him $300, making in all $1,500, which she paid directly to her husband.

Samuel Perry testified: "I knew from conversation in the presence of Mr. Gleghorne, it was often spoken of, that this money was used for paying the contractor for building this house." The respondent's testimony relating to the amount of money which the complainant contends she paid to him, is the following: "I paid for the house out of my own money, except $800 I got from my wife. The money I paid for the lot came out of my salary, except $600 I made in speculation. The $400 they speak of having been paid me at the same time I got the $800, I have no recollection of ever getting. I don't

know anything about the $300 she speaks of as having been given to me before the $800 was paid to me." The respondent is not corroborated by any other witness or circumstance, in his denial of the receipt of more than $800 from the complainant.

Without making any observations on the credibility of the two witnesses, the complainant and the respondent, whose testimony is contradictory as to the payment of $700, let us look elsewhere in the evidence to see if there be sufficient proof to turn the scale in favor of either party. Samuel Perry testified to the fact that in conversation in the presence of the respondent, this money was often spoken of as having been used for paying the contractor for building the house. This is nowhere denied, and may therefore be taken as an admission, at the time, by the respondent, as being true. The complainant stated clearly and positively that she paid the sum of $1,200 in May, 1875, to her husband, and $300 before that time, also, which was used to pay for the improvements. The bank account of the respondent shows that, during the same month of May when it is claimed that the $1,200 was paid to him, there was deposited to his credit $1,010, and that during the same year, 1875, from January 9th to Sept. 27th, his deposits amounted to $2,050. During this time and for five years prior to 1876, he was general clerk for T. C. Jenkens at a salary from $3 to $12 per week. For the year preceding 1875 his deposits were $800, and for the year following 1875 they were $125. There is no evidence of him having received money during this time from any other source than his salary and from the complainant. The master, however, does not regard this bank account, which was put in evidence by the respondent, as throwing any light upon the case, except inferentially, in connection with the testimony upon the part of the complainant, relating to the question, as to how much money she paid her husband. And the fact that about the same time the respondent admits having received about $800, and the complainant contends she paid him $1,200, his bank account showing deposits largely in excess of those at any other time, does seem a circumstance to predominate in favor of the complainant. This taken in connection with the direct and positive statement of the complainant, and the statement of Samuel Perry, as against the testimony of the respondent, is, in the opinion of

the master, of sufficient weight to overcome the respondent's denial, and turn the balance in favor of the complainant. The fact therefore is, as found by the master, that the complainant paid to the respondent the sum of $1,500.

The most difficult question in this case is whether the money found to have been paid by the complainant to the respondent, was a gift. The bill avers "that the complainant expended $1,500 in paying for said lot and erecting a dwelling house thereon." The answer to this averment is "that the complainant gave the respondent $800 with which he paid a judgment against him for a portion of the costs of the house. But at the time the money was given to him, there was no agreement, contract or understanding, that he was to repay, return, or secure said money in any way. The respondent avers that said amount was given to him by the complainant."

It is contended upon the part of the respondent, that the above averment in the answer is responsive to the bill, and entitled therefore to the weight given it by the well-settled rule of evidence in equity, that an answer responsive to the bill can only be overcome by the testimony of two witnesses, or of one witness corroborated by circumstances elsewhere in evidence.

It is well established by the authorities that if the defendant directly denies the allegations in the bill, or affirms matter immediately connected with the original liability charged, by way of defence, the answer is responsive. But if the defendant alleges new matter not stated or inquired of in the bill, and introduces it by way of avoidance in his defence, the answer is not responsive, and therefore requires proof. Under the light of these well-settled rules and principles, is the answer, as to the question of a gift in this case, responsive? The bill charges a liability in the payment of a sum of money to the defendant. The defendant set up, by way of defence, that it was a gift to him from the complainant. The receipt of a portion of the money is admitted; the original liability is therefore confessed. But the answer is that the defendant received it in such a way as not to make him accountable for it. The allegation that it was a gift is clearly introduced by way of avoidance. Is it then, affirming matter connected with the transmission of the money, in such a way, and so directly, as

to make the answer responsive, and therefore put the burden on the complainant? In the opinion of the master, it is not so. The matter of a gift was not stated or inquired of in the bill, but the defendant introduced it in his answer affirmatively against the demand in the bill. The answer does not allege any fact indicating a gift, but avers affirmatively a right, by way of inference, in opposition to the liability charged in the bill, thereby taking the burden of proving it upon himself.

[Discussing the authorities: Allen v. Moner, 17 Vt. 67; Paynes v. Coles, 1 Munf. 373; Green v. Hart, 1 Johns. 580, the master proceeded:]

By an application of the principles adduced from the authorities cited, to the question under consideration, the master is of the opinion that the answer is not responsive, and that therefore the defence must be established by proof.

The burden of showing that the money in question was a gift, is cast upon the respondent. The direct evidence bearing upon this point is very brief, and the parties agree as to the manner in which the money was transmitted, namely, without any agreement or understanding. It is conceded that the money was applied toward the payment of a debt against the respondent, contracted by him on account of the improvements made on his lot of ground. It was well understood at the time that the complainant gave her money for that purpose. She said: "I told him to pay it on our home." The respondent stated that "there was nothing said." There is not the slightest evidence of a gift ever having been mentioned until by way of defence in the answer. There being no direct evidence that it was, at the time of delivery, intended as a gift, the only question remaining to be determined is, whether the inference of a gift arises from the manner in which the complainant paid her money to her husband? If he cannot show that it was a gift, either directly or by inference, he will be compelled to account to his wife for it as her trustee.

In the first instance, when the husband receives his wife's money, the law presumes him to have received it as her trustee or agent. Since the act of April 11, 1848, the presumption of liability between husband and wife is the same as between strangers. She may take the position as a creditor, as to her husband, with all the rights of a creditor. If the

complainant had paid her money in the same manner and for the same purpose, as in this case, to a stranger, it certainly could not be contended that an inference of a gift would arise. In such a case the law presumes a liability to repay it. ·

The mere possession, in the absence of a promise, of a wife's money, is no evidence that the title to it was vested in the husband. If he would make title in himself, he must prove a purchase or gift: Gicker's Admrs. v. Martin, 50 Pa. 138; Grabill v. Moyer, 45 Pa. 530; Hamill's App., 88 Pa. 367; Mellinger v. Bausman, 45 Pa. 522. She was not bound to proclaim that it was not a gift; Bergey's App., 60 Pa. 408. The intimacy of the marriage relation is such, that the husband's possession of his wife's money ought to be considered very slight evidence of title in him; Bachman v. Killinger, 55 Pa. •418; McDermott's App., 106 Pa. 358. The presumption of law, in this case, is in favor of the complainant, and it is incumbent on the respondent to disprove it. Whenever a person obtains by voluntary donation a benefit from another, the onus .probandi is upon the former: 2 Dan. Ch. Pr., § 852.

But it is contended that the evidence upon the question now under consideration warrants the inference of a gift, and in support of this position, the case of Johnston v. Johnston, 31 Pa. 450, is cited. It is true, that case is similar in some respects to this one, and comes nearer being of the same nature than any other that has come to our knowledge. That was an action by the wife against the administrator of her deceased husband for the recovery of money alleged to have been received by her husband, in his lifetime, from her separate estate. At that time the husband had bought property, and at his wife's instance, he repaired and fitted up one of the houses with the money received from her estate. They afterwards moved into this house and resided there. The court held that because the wife directed her money to be used in a particular way for her benefit and the comfort of her family, she could not reclaim it. In this case, at the time the husband received from his wife her money, he had bought a lot of ground, contracted for and erected thereon a house, independently of the request or direction of his wife. They moved into this house a short time before its completion, and the payment of the money in question.

The distinction in point of fact between that case and the one in hand, is, that there the house was repaired and "fitted up" at the instance of the wife, with the direction from her to her husband to expend her money for that particular purpose. Here the wife gave no direction, and it does not even appear that she was consulted in any way, as to the improvements that were made on her husband's lot of ground. The debt was contracted by the husband, independent of his wife, and it cannot therefore be contended, that the house was built at her instance, in which she intended and authorized her money to be invested.

But it is argued that because she knew her husband*was indebted for the construction of the improvements, and that she gave him money, with the knowledge and instruction that he should apply it toward the payment of this incumbrance on their home, that therefore it was an investment by her direction, within the rule in Johnston v. Johnston, supra. The features necessary to bring this case within the above authority, are not found in the evidence. The improvements here, were not made on the faith of any promise from the wife, nor were they made by her direction for the purpose of an investment, which should inure to her benefit and comfort. The circumstances do not warrant the inference that it was intended as an investment. The respondent, with his wife, moved into this house within five months from their marriage, before it had been completed, and before the contractor had been paid. About this time the complainant received upwards of $1,500 from her mother's estate, and the condition of her husband's affairs seemed to be such as to require financial aid, from other than his own resources. Under these circumstances, it was very natural and consistent for the complainant to let her husband have the use of her money to relieve him from financial embarrassment, and in their anxiety to acquire a home, to request him to apply it properly, and that was, toward the payment of the debts he had contracted in the improvement of his property. It is not unreasonable to suppose that she gave him her money with the expectation and confidence, that he would account to her for it; and that when she told him to pay it on their home, she only expressed her judgment and desire as to the use he should make of it, and not that she intended to part

entirely with the ownership thereof, in the character of a gift, nor in a manner that would preclude her from reclaiming it.

The master is therefore of the opinion that a decree should be made in favor of Sarah I. Gleghorne, and against W. D. Gleghorne, for the sum of fifteen hundred dollars and the costs of this proceeding, and submits the form of a decree in accordance with this opinion.

Exceptions were filed to the report of the master, in substance :

1. A court of equity has no jurisdiction on the bill filed by the wife to obtain the relief prayed for in this case.

2. The master erred in finding as facts that the testimony of the plaintiff was sufficient to overturn the respondent's denial that plaintiff paid to the respondent the sum of $1,500.

3. The master erred in finding that the answer did not allege facts indicating a gift but averred affirmatively a right by way of inference and in opposition to the liability charged in the bill, the respondent thereby taking the burden of proving it upon himself.

4. The master erred in not finding that but $771 was received from the plaintiff by the defendant, and that it was received by him as a gift and was not recoverable from him.

These exceptions being overruled by the master, and, on their renewal, argued, on September 24, 1887, the court, BAILEY, J., dismissed the exceptions and signed a decree that the defendant pay the plaintiff the sum of $1,200, the master's fee and costs. Thereupon the defendant took this appeal, assigning for error the dismissal of said exceptions and the making of said decree.

*Mr. James Fitzsimmons* (with him *Mr. Jno. S. Robb*), for the appellant:

1. The bill does not charge either fraud, accident or mistake. There was no averment that the plaintiff had any interest in the realty. There is no proceeding for discovery, nor is a trust on the part of the defendant alleged. The proper action was plainly an action of assumpsit or debt at common law. Adams's Appeal, 113 Pa. 449; Story's Eq. J., § 464, and

Arguments.

Bank v. Adams, 1 Pars. 534, do not sustain the master's position that because the objection to the jurisdiction was not raised in the pleadings, it could not be made when the parties had proceeded to a hearing on the merits. Where there is a complete and ample remedy at law, equity will not entertain jurisdiction, and it matters not whether the defendant has demurred or has volunteered to proceed by answer and testimony: Gloninger v. Hazard, 42 Pa. 401; Koch & Balliet's App., 93 Pa. 434; Passyunk B. Ass's App., 83 Pa. 441; P. & C. R. Co.'s App., 99 Pa. 177; Kauffman's App., 53 Pa. 383; 1 Story Eq. J., § 458; Tillmes v. Marsh, 67 Pa. 507.

2. In equity procedure, where the answer is responsive to the allegations of the bill, it is conclusive unless overcome by the satisfactory testimony of two witnesses or of one witness corroborated by other circumstances and facts which give a greater weight than the answer or an equivalent in weight to a second witness. The answer in this case was clearly responsive: Burke's Appeal, 99 Pa. 360. There was not a witness called in corroboration of the wife's testimony. Moreover, there must be no doubt of a wife's right as the creditor of her husband: Hause v. Gilger, 52 Pa. 412. A wife cannot by her next friend maintain an action of debt against her husband on a contract during coverture: Ritter v. Ritter, 31 Pa. 396. To authorize the interference of a court of equity, a clear case of title in the wife under the acts of 1848 and 1850 must be made out: Hunter's App., 40 Pa. 194.

3. On the other hand, slight evidence only is required to make out a gift from the wife to the husband: Crawford's App., 61 Pa. 52; Trough's Est., 75 Pa. 115; Camp's Est., 36 Conn. 92. Where a wife has expressly directed money belonging to her to be expended in a particular way for the comfort of herself and family, it cannot be reclaimed by her: Johnston v. Johnston, 31 Pa. 454; Bear v. Bear, 33 Pa. 529; Bergey's App., 60 Pa. 416; Lyle's Est., 11 Phila. 64; Mellinger v. Bausman, 45 Pa. 528; Hinney v. Phillips, 50 Pa. 386.

*Mr. J. McF. Carpenter*, for the appellee:

1. The question is, not whether plaintiff had a remedy at law, but whether she had an adequate remedy. An incumbrance would have swept away the estate, and the wife's

judgment when recovered at common law would have been valueless.

2. A married woman possessed of a separate estate may give or lend the income of it, if at her disposal, to her husband as to any other person. The mere possession by the husband of money which has accrued to his wife under and since the act of 1848, is no evidence that the title has passed to him. The presumption is that it continues hers, and transmission of title to the husband must be shown either by proof of a gift or a contract for value: Tower v. Hagner, 3 Wh. 48; Johnston v. Johnston, 31 Pa. 450; Grabill v. Moyer, 45 Pa. 530; Mellinger v. Bausman, 45 Pa. 530; Young's Est., 65 Pa. 101. The defendant made no effort whatever to prove a gift. The master found, and his finding was confirmed by the court, that the defendant received the money in controversy from his wife; that it was her separate estate and that it was not a gift.

OPINION, MR. JUSTICE PAXSON:

The question of jurisdiction was directly raised in this case. The master found, however, that it was not raised by the pleadings, and was, " therefore, of opinion that the question of jurisdiction cannot be entertained so as to allow the objection to prevail after the parties have volunteered to proceed to a hearing upon the merits."

This was a bill filed by a wife against the husband for the sole purpose of recovering a sum of money which she gave him to aid in the erection of a house for their joint home. The husband had bought the lot before marriage. After that event he contracted for the building of a house thereon to cost about $2,500. The wife alleged she contributed $1,500 towards this object. To use her own words, " I gave that money to my husband towards paying for our home." There was no allegation that anything was said about its being a loan to her husband or that he was to repay her.

It is certain that no action at law would lie by the wife against the husband for this money. So much was settled by Ritter v. Ritter, 31 Pa. 396. There are, however, authorities which hold that as concerns her separate estate a wife may file a bill against her husband: Brightly's Equity, § 521; 1 Dan.

Ch. Pr. 142.   Whether these authorities are applicable to this case will not now be discussed, as we propose to decide it upon other grounds.   The question of jurisdiction is left open.

It may be mentioned, as one of the results of such a proceeding as this, that the wife was called and examined as a witness directly against the husband.   Indeed, the bill could not be sustained without her testimony.

The defendant in his answer admits that he received about $800 from the plaintiff, but alleges that it was a gift.   His precise language is: "The respondent avers that the said sum of $800 was given him, the respondent, by the complainant." He had previously averred that "there was no agreement, contract, or understanding between the complainant and respondent that he was to repay or return said money, or secure the same in any way."   This makes a distinct averment of a gift of the money as opposed to a loan.   As it is responsive to the bill, the case comes within the familiar rule in equity that the answer must have more than the oath of the plaintiff to overcome it.   There must be two witnesses, or the oath of one and corroborating circumstances.

The learned master evidently felt the strain of this, and he avoided it by holding that the answer was not responsive, but set up new matter by way of avoidance.   He says: "The matter of a gift was not stated or inquired of in the bill, but the defendant introduces it in his answer affirmatively against the demand in the bill."   The case was disposed of upon the theory of a loan to the defendant.   Yet there is not a word in the bill, or in the testimony, to indicate that it was a loan. There is merely averment and proof that plaintiff gave defendant a certain sum of money to aid him "to pay on our home." The answer is not only responsive, but it is in entire harmony with the averments of the bill.   There being no sufficient proof to overcome the answer, the bill should have been dismissed for that reason.

Even if we are mistaken in this, we think the case is ruled by Johnston v. Johnston, 31 Pa. 450.   There the wife's money was received by the husband under circumstances very similar to those existing in this case, and was appropriated by him at her request towards the fitting up of a house for her own comfort, and that of her family, and the court held that she could

not recover it back in an action against her husband's administrator. I am unable to see any material distinction between fitting up a house as a home, and assisting in building a house for a home. In each case the wife expected to use and enjoy the fruits of her money in a home which she would occupy in common with her husband. In the case in hand the money may have been unwisely employed. But the law cannot supply wisdom to those who lack it, nor can it remedy all the mistakes which a man or a woman may make in the course of a lifetime. In the present case, the wife evidently contributed this money for the completion of a house which was to be her home without a word or a thought about repayment. The husband cannot be treated as her trustee because he appropriated the money as she directed. The plaintiff says in her testimony : "When I gave him the money, I told him to pay it on our home. . . . . He took .the money and paid it out ; it went into the house ; it was for the purpose of paying the contractor." This is entirely inconsistent with a loan, or with a trust on the part of the husband.

The decree is reversed, and the bill dismissed at the costs of the appellee.