The Columbia Avenue Savings Fund, Safe Deposit, Title and Trust Company, Administrator d. b. n. c. t. a. of the Estate of Adam Steinmetz, deceased, et al., Appellants, *v.* William Lewis, Arthur T. Bending, Anna V. Lewis, Annie Lewis, Executrix of William Lewis, deceased, et al.

*Wills—Life estate—Power to sell—Mortgage.*

Where a testator gives his wife the income of his property during her life or her widowhood with a power to sell real estate " for the payment of my debts and purposes of my estate," without any liability on the part of the purchaser to see to the application of the purchase money, and authorizes his widow to continue his business for her sole use, she has no power to mortgage the real estate for a longer period than her own life to raise money to pay interest on a mortgage, to pay taxes or to assist her in conducting the business; and if she does so and the mortgagee knows or

has the means of knowing that the money is not to be used to pay the testator's debts, or for the purposes of his estate, he will take no title to the real estate by purchase in foreclosure proceedings on the mortgage; and an assignee of the mortgagee who has taken it without any declaration of no set-off is in no better position than the mortgagee.

A release of part of the bond covered by a mortgage which was ultimately decided to be void, in consideration that the mortgage should be valid as to the remainder of the property is a contract looking to the abatement of possible litigation and to repose, and as such, is both substantial and valid as a consideration.

Argued March 20, 1899.   Appeal, No. 270, Jan. T., 1898, by plaintiffs, from decree of C. P. No. 4, Phila. Co., June T., 1895, No. 1208, on bill in equity.   Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ.   Affirmed.

Bill in equity for an account and to declare invalid certain mortgages.

The case was referred to E. Hunn Hanson, Esq., as referee, who found the facts to be as follows:

The question to be resolved is the invalidity or validity of the mortgages described in the bill and executed by Margaret Steinmetz.

And this depends upon: (1) Whether or not the power of sale in the will of Adam Steinmetz gave authority to execute the mortgage to William Lewis; (2) whether or not William Lewis knew or had the means of knowing that the mortgages executed by Margaret Steinmetz were not to raise money for the estate, but to enable her to conduct the said business; (3) Whether or not the paper writing, dated November 30, 1888 (exhibit "A" to answer of William Lewis), was a ratification of the acts of Margaret Steinmetz in executing the said mortgages.

The following are all the facts material and relevant to the issue manifested from the pleadings and evidence:

1. August 10, 1878, Adam Steinmetz died, having first made his will, of which the following is a copy:

"Be it remembered, That I, Adam Steinmetz, of the City of Philadelphia, marble mason, being of sound mind, memory and understanding, do make this my last Will and Testament, as follows:

" First. I wish all my just debts and funeral expenses to be paid soon after my decease.

" Item. I give, devise and bequeath all the rents, interest and income of all estate, real and personal, including the use of all my plate, household furniture and other articles, &c., to my beloved wife, Margaret Steinmetz, for and during all the term of her widowhood in lieu and bar of all dower or thirds of my estate, with full and entire power and authority for her at her discretion to continue my business, yard, mill, &c.. and operate and carry on the same for her own sole and separate use and benefit during her said widowhood, or to rent and dispose of the same in any wise, without any liability or control whatever. And from and immediately after the decease or intermarriage of my said wife, whichever shall first happen, I give, devise and bequeath all my said estate, real and personal, as follows, to wit:

" Item. One equal sixth part thereof, I give, devise and bequeath to and amongst all the child or children then living of my deceased son, Bartle Christopher Steinmetz, and the lawful issue of them as may then be deceased per stirpes, their heirs, executors, administrators and assigns.

" Item. One full equal sixth part thereof I give, devise and bequeath to my son, Charles W. Steinmetz, his heirs, executors, administrators and assigns.

" Item. One full equal sixth part thereof I give, devise and bequeath to my son, Howard Steinmetz, his heirs, executors, administrators and assigns.

" Item. One full equal sixth part thereof I give, devise and bequeath to my son Adam Steinmetz, Jr., his heirs, executors, administrators and assigns.

" Item. And the remainder two full equal sixth parts thereof I give, devise and bequeath to my said son, Howard Steinmetz, In Trust to collect and receive the rents, interest and income thereof and pay over the same half yearly or when and as received into the hands of my two daughters, Maria Elizabeth Neall and Emma Steinmetz, share and share alike, for and during their respective natural lifetime for their sole and separate use, support and comfort, and whether married or single and without any interference or control of any husband they may have or take and without being liable to his debts, contracts

or agreements, and her receipt under her own hand to be the only discharge therefor. And from and after the decease of my said daughters respectively, then the principal of the share of my said daughter so dying shall go to and be equally divided amongst her children absolutely and forever. Provided, However, that in case of the decease of either or any of my aforesaid five now surviving children without leaving any children living at time of his or her decease or of all the children of my son, Bartle Christopher Steinmetz, deceased, then the share or sixth part of him or her so dying shall go and be equally divided among the survivors of my said five children now living before mentioned and the children of such of them as may then be dead per stirpes.

"I authorize and empower my executors hereinafter mentioned whenever they may deem it necessary to sell all or any part of my real estate, either at public or private sale, for the payment of my debts and purposes of my estate without giving security for the application of the proceeds, &c., and to make good and sufficient deed or deeds therefor to the purchaser or purchasers thereof in fee without any liability on the part of the purchaser or purchasers thereof to see to the application of the purchase money and free from all trusts and liens of debts. And, lastly, I nominate and appoint my said wife, Margaret, and my son, Howard Steinmetz, to be the executors of this my last Will and Testament. In witness whereof I have hereunto set my hand and seal this twelfth day of February, Eighteen hundred and seventy-five.

"Signed, sealed, published and declared in presence of us.

"Signed:
    "EDW. S. CAMPBELL,
        "No. 531 Vine St.
    "HARRY T. HARRISON.

(Signed)
ADAM STEINMETZ [Seal]"

Letters testamentary were duly issued by the register of wills to the executors named; and thereupon Margaret, the widow, aided by Howard, her son, took over the management of what had been the business of the decedent, which was that of a steam marble mill and yard on Ridge avenue near Hamilton street,

Philadelphia. In 1880 Howard Steinmetz died unmarried and intestate. Margaret Steinmetz was an unlettered woman and, from the death of the testator until her own, employed others to act for her in the management of the steam marble mill. After the death of Howard, and for several years, Emma Steinmetz for her mother Margaret signed the checks required in the business; and Adam Steinmetz, Jr., and Charles W. Steinmetz, two sons of the decedent, had some employment for a while in it, what did not distinctly appear. From 1882 to 1888, when she made an assignment for the benefit of her creditors, Margaret employed to carry on the business A. J. Merceron, a bookkeeper, and Daniel Kornbaugh, foreman.

At the time of the testator's death he was the owner of the real estate upon which the steam mill was erected, the house No. 642 North Fifteenth street, in which he lived, and the seven other parcels of real estate in Philadelphia mentioned in the twenty-fourth paragraph of the bill, all of which were incumbered with mortgages.

2. William Lewis, in the year 1886 and prior thereto, conducted a business next to that carried on by Margaret Steinmetz. In that year he was solicited by her and in her behalf for loans of money; and he then began to make such loans, and, as they grew in frequency and amount, he obtained from her an assurance that she would secure their repayment by the execution of mortgages of the real estate which had passed under the will of her husband. In this way Margaret Steinmetz executed to William Lewis, at his request, the mortgage, in fee simple, of all the real estate which was of Adam Steinmetz to secure the payment of $1,000, dated September 18, 1886. In the same manner she executed to him and at his request a similar mortgage of all the same real estate to secure the payment of $3,000, dated April 14, 1888. In like manner she executed to him and at his request a similar mortgage of all the same real estate to secure the payment of $5,000, dated February 19, 1887.

At the date of the execution of the mortgage no money passed from the mortgagor to the mortgagee; but for each and all of them the mortgagee had from time to time loaned to the mortgagor moneys which then remained unpaid, and with respect to each equaled the sums to secure the payment of which the mortgage was given.

The averments of the bill alleging that the mortgagee gave no valuable consideration to the mortgagor and those charging that William Lewis through these mortgages and other management fraudulently intended to possess himself of the property of Adam Steinmetz, deceased, were not only not shown, but the contrary was proved that he had loaned the moneys before mentioned, and that his proceedings with respect to the mortgages were no different from those of a creditor desirous of securing the moneys due him in the most effective way.

On May 28, 1888, Margaret Steinmetz executed an assignment for the benefit of her creditors of all of the property owned by her and belonging to the estate of her deceased husband. The deed is recorded in Philadelphia in deed book, No. 392, p. 188, and William Lewis was made assignee. He filed an inventory and appraisement, collected from debtors and paid to creditors, but rendered no account of his assigneeship, alleging that he was not required by the creditors to do so who knew there was nothing for distribution.

3. The bill avers that if any valuable consideration passed from Lewis at the time of the execution of the mortgage, it was not used for the estate of Adam Steinmetz, and this was known to Lewis, but it was a transaction between him and Margaret Steinmetz. This is denied in the answer of William Lewis, and it is alleged that the loans made by him were made to the estate; that the notes given for the loans were signed by Margaret Steinmetz as executor or by her attorney as executor, and he believed the money was being used by her for the benefit of the estate. This is directly responsive to the averment, and, therefore, is to be accepted as true, unless overcome by the testimony of two witnesses or of one with corroborating circumstances, or unless it is in conflict with the testimony of the respondent on the same point. William Lewis was cross-examined on the part of the complainant and on this head testified that he knew Margaret Steinmetz was conducting the steam marble mill under the name of A. Steinmetz & Company; that the check or notes given for much of the moneys advanced by him were so signed, or signed A. Steinmetz & Company, per Emma Steinmetz, attorney, or Merceron, attorney, or Kornbaugh, attorney. He further testified that he had, by way of loan, paid a bill to Baird & Son for stone by them furnished to the business of Margaret

Steinmetz, and he had aided in securing for her marble work a contract to furnish material in erecting one of the buildings of a trust company upon which contract he stipulated he should receive ten per centum of the moneys paid. Upon re-examination he testified that he supposed the money which he loaned her was to pay the taxes and interest due by the estate until the real property could be sold. His testimony was in a measure contradictory of his answer, not sufficiently so, perhaps, to overcome its effect as evidence (Spencer's Appeal, 80 Pa. 317), but enough to weaken its force. The averment of the bill in this behalf was corroborated by the testimony of Kornbaugh that the business straits of Margaret Steinmetz were known to, and were the subject of talk between, him, Merceron and Lewis. This was not denied either by Merceron or Lewis, and the latter had the opportunity to deny it. It was further corroborated by the testimony of Merceron, that at the time referred to Lewis was solicited to loan to the business, and that he did so loan. Hence it is found as a fact that Lewis knew that the moneys loaned by him to Margaret Steinmetz were loaned for the business in which she was engaged, and was so used by it; that he knew some of it was wanted for taxes and interest due by the estate and was so used, but the evidence showed a comparatively small part was so used, and there was no evidence that any of the loans to secure which the mortgages were executed were made to or for the benefit of the estate.

4. In the latter part of 1888, some of the children of Margaret Steinmetz, doubting her power to mortgage real estate in which they had an interest, consulted counsel with respect to it. This came to the knowledge of William Lewis, who took the position that unless their validity was admitted he would proceed to foreclose, and he also consulted counsel. As the result of the conference of the respective counsel, a paper writing was drawn up and executed to which Margaret Steinmetz, individually and as executor, together with all those sui juris in interest and William Lewis were parties. The following is a copy:

[Exhibit " A " to answer of William Lewis.]

" This agreement made the thirtieth day of November in the year Eighteen hundred and eighty-eight, between Margaret Steinmetz, widow of Adam Steinmetz, deceased, and surviving executor of the last will and testament of the said Adam Stein-

metz, of the first part; Charles W. Steinmetz, Emma Steinmetz and Maria Elizabeth Neall, surviving children of the said Adam and Margaret Steinmetz, of the second part: The Guarantee Trust and Safe Deposit Company of Philadelphia, trustee for Emma Steinmetz and Maria Elizabeth Neall aforesaid, of the third part; Anna Belle Steinmetz acting as guardian for Eva Steinmetz, minor child of Adam Steinmetz, Jr., deceased; Emma Steinmetz, guardian of Ella Steinmetz, minor child of Christopher Steinmetz, deceased, of the fourth part; Levi Steinmetz, Emma E. Steinmetz and Mary B. (Steinmetz) wife of Dr. William W. Numbers, grandchildren of Adam Steinmetz the elder, deceased, of the fifth part; and William Lewis of the sixth part:

" Whereas, William Lewis is the mortgagee in three several blanket mortgages for five thousand dollars ($5,000), three thousand dollars ($3,000), and one thousand dollars ($1,000) respectively, given by Margaret Steinmetz, widow and executrix of the estate of Adam Steinmetz, deceased, upon which mortgages interest has been paid up to June, 1888. And whereas, some dispute in respect thereof has arisen which it is desirable to adjust.

" Now, therefore, this agreement witnesseth:

" First. The said mortgages aforesaid are hereby recognized by the executrix and all the heirs as valid for their principal and interest.

" Second. The said William Lewis agrees to release from the lien of said mortgages all of the property of the estate saving the property, building and appurtenances at Ridge avenue and Hamilton street.

" Third. The said Lewis agrees to aid to the best of his ability in procuring a purchaser for that property and in holding all mortgages from pressing for one year to sheriff's sale as against that property.

Fourth. The said Lewis agrees to help to the best of his ability for six months to prevent sheriff's sale of the other properties.

" Fifth. The said Lewis admits that he has been notified and believes that the life interest of Mrs. Steinmetz is not equal to the amount of money which Mrs. Steinmetz owes to the estate

and must pay to it before she can derive any benefit therefrom. This admission, however, does not in any wise prevent the said Lewis from such action as Mrs. Steinmetz's assignee for the benefit of creditors as he may be advised or by the court directed to pursue.

Sixth. Moneys heretofore advanced or that may hereafter be advanced by the said Lewis in postponing sheriff's sale of any of the said property, in payment of interest or other charges on the said property, shall be returned to the said Lewis out of the proceeds of any of the sales of the said property, and he shall also, in respect thereof, be entitled to hold the same position as the payees thereof.

" Witness our hands and seals the day and year aforesaid.

" MARGARET STEINMETZ.          [Seal]

" MARGARET STEINMETZ,

" Executrix.          [Seal]

" CHARLES W. STEINMETZ.          [Seal]

" A. J MERCERON.

" EMMA STEINMETZ,          [Seal]

" MARIA E. NEALL,          [Seal]

" ANNABELLE STEINMETZ,

" Guardian for Eva Maria Steinmetz.

[Seal]

" EMMA STEINMETZ,

" Guardian of Ella Steinmetz.

[Seal]

" LEVI E. STEINMETZ.          [Seal]

" WM. W. NUMBERS, M. D.

" EMMA E. STEINMETZ.          [Seal]

" MARY B. NUMBERS.          [Seal]

" WM. LEWIS.          [Seal]

" GUARANTEE TRUST & SAFE

DEPOSIT CO.          [Seal]

" By THOMAS COCHRAN, Pt.

" Attest:

" JOHN JAY GILROY, Sec'y."

With respect to this paper the bill alleges that Lewis, by threats, unfair and unlawful means, succeeded in obtaining its execution. The answer of Lewis is distinctly responsive. It

denies the allegations, sets forth how the agreement came to be executed and avers that it was the result of the efforts of the counsel of each party after consultation with their client.    Three of those who were parties to it, and who were heirs of Adam Steinmetz, were examined and their testimony supported the answer of Lewis and showed that, excepting Eva Steinmetz and Ella Steinmetz, all who signed were sui juris ; that they knew the purpose and effect of the agreements ; that they were all very reluctant to sign it, and only did so upon the urgency of their mother and in the belief that the threatened foreclosure would be ruinous, and that they had the benefit of legal advice throughout.

In the execution of the paper Ella Steinmetz was represented by her guardian, Emma Steinmetz ; Eva Steinmetz, another minor, purported to be represented by her mother, Annabelle, as guardian, but in point of fact her mother was not the guardian of her interest or estate, and she had none until the appointment of the orphans' court of J. E. M. Kellar, one of the complainants.

Upon Lewis's answer and the testimony just referred to, it is found as a fact that no unfair or unlawful means were used to procure the execution of the agreement of November 30, 1888. It is also found that Lewis executed releases as the properties were sold by him.

5. It is alleged in the bill, that from the date of the said assignment for the benefit of creditors, Lewis assumed control of all the property, real and personal, belonging to the estate of Adam Steinmetz ; that he sold the personal property and appropriated its proceeds, and joined Margaret Steinmetz in selling all of the real estate (excepting one piece on Ridge avenue south of Hamilton street), and the proceeds were also appropriated by him ; that he has not accounted for such proceeds, and still holds them.

The answer of Lewis admits that under the assignment he took possession of the property assigned ; that he sold the stock and a portion of the personal property, collected such debts as were collectible, and applied the same to the payment of legitimate expenses ; that in compliance with the assignment and the agreement of November 30, 1888, he sold portions of the real estate, and until these sales he collected the rents.    It denies

that he retained or holds any property as alleged, and sets forth the sums received from the real estate.

The testimony disclosed that he kept no distinct account of the personal property and none of the real estate, and that he had no balance in his hands. His accounts were very incomplete and many of his vouchers were not produced.

It is found as a fact from such evidence as there was, and in this behalf it was not contradicted, that so far as the real estate alone was concerned, from 1889, February 12, to April 27, he received from its sale . . . . . . . . $35,789 50

Out of which between the same dates he paid mortgages, interest, ground rent, taxes and commissions . . . . . . 33,535 92

Leaving in his hands on the last named date from these real estate transactions . . $ 2,253 58

6. Margaret Steinmetz died intestate and insolvent in November, 1891. The only real estate unsold is that described in exhibit " D " to the bill. Immediately after her death, Lewis notified the tenant to pay no rent except to himself. He did this as assignee for the benefit of creditors, and, because Mr. Glenn, assuming to act for all of the heirs, and, in fact acting for some of them, asserted by a writing dated August 14, 1888, that the proceeds of the real estate should be devoted to the payment of creditors. Two of the heirs testified that they had not authorized this, and upon this being made known to Lewis, he desisted from his demand for rent, and the property in 1891 was conveyed by Margaret Steinmetz to W. W. Numbers, M. D., and by him was the subject of a declaration of trust as mentioned in the twenty-fifth paragraph of the bill.

7. The mortgage above mentioned for $5,000 has been paid out of the proceeds of the sales of real estate mentioned in it.

On November 18, 1891, letters of administration d. b. n. c. t. a. of the goods and chattels which were of Adam Steinmetz, deceased, were duly granted by the register of wills of Philadelphia to the Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Company, one of the complainants.

The children of Bartle Christopher Steinmetz, deceased (a son of Adam Steinmetz), are Mary, married with Dr. Numbers; Emma E. Steinmetz, Ella Steinmetz and Levi E. Steinmetz, all of whom are living and sui juris. Howard Steinmetz (a son of Adam Steinmetz) died in 1880, unmarried and intestate. Another son of Adam Steinmetz, to wit: Adam J., died February 20, 1888, intestate, leaving a widow, Annabelle. and a minor child, a daughter, (whose guardian is complainant in the bill filed). The other children of Adam Steinmetz are Charles W. Steinmetz, Emma Steinmetz and Maria Elizabeth Neall, all of whom are of full age and the last named is a widow.

8. The amount of money (if any) remaining in the hands of Mr. Glenn from his receipt of rents was not shown. William Lewis assigned the two disputed mortgages to the present holders, and they neither asked nor got a declaration of no set-off from the mortgagor.

By the words of the will of Adam Steinmetz there was bequeathed and devised to his wife Margaret the income of all of his estate, real and personal, during her widowhood, with power to continue his business for her sole use also during her widowhood, and with further power to dispose of the business without liability or control. And from implication this bequest was intended to be for life should she not marry; since the will after thus providing proceeds to devise the rest of the estate, using these words: " And from and immediately after the decease or intermarriage of my said wife, whichever shall first happen," I give, devise, etc.

This estate for life was the extent and limit of the devise to Margaret. The remainder of the testator's estate, real and personal, was divided into sixths, one of which was devised to the children of a deceased son, Bartle Christopher, one each to the two living sons and two sixths were devised to Howard in trust to collect the income and pay it share and share alike to the testator's two daughters, Maria E. Neall and Emma Steinmetz, for life and with remainder over. The testator's widow and his son Howard were nominated executors, and they were empowered, when they should deem it necessary " for the payment of my debts and purposes of my estate," to sell all or any part of the real estate without giving security for the application of the proceeds, etc., and to make conveyance to the purchasers in fee,

without any liability on the part of the purchaser to see to the application of the purchase money, and free from all trusts and liens of debts.

This broad and general power was limited by but two requirements, either that the sale should be for the payment of the testator's debts or for the purposes of his estate. The power to sell included that to pledge in mortgage as the lesser disposition. The disputed mortgages covered the testator's real estate. They were not executed to raise money to pay the testator's debts; and even had they been executed to obtain moneys to relieve the accruing burden of taxation and interest upon those debts which the testator had created and made fixed liens upon his real property, such purpose would not have brought them within the requirement of the will in this behalf. For such taxes interest and repairs became obligations of the life tenant. It was argued on behalf of the validity of the mortgages that they were executed for purposes of the testator's estate, inasmuch as one of those was the conduct by his widow of his business of steam marble works. But this business was not to be conducted for the benefit of the estate, it was for the widow's sole and separate use and benefit, even to the extent to dispose of it without liability or control. It was further urged that if the power of sale was not intended to be used for the business there was nothing in the intention of the testator that could answer the "purposes of my estate." This seems a pure assumption, for the ordinary purposes beneficial to an estate incumbered by mortgages at the time of testator's death as this would be to sell the realty or a part of it at a price higher than would be likely if it were sold under legal proceedings, or to sell if either the rise in the value of real estate, or an impending depreciation would render such a sale expedient. It was finally argued that as the testator relieved an intending purchaser from seeing to the application of the purchase money any sale (or mortgage) by the executors was valid and within the power. But this overlooks the limitation of the power. Exercised as the testator's will intended and expressed, that is to say, (1) for the payment of his debts, or (2) the purposes of his estate, a purchaser could securely pay to the executors and be free of liability even if they misapplied or otherwise squandered it. But this freedom only existed when the power was legally exercised, and there is no

logical connection between such freedom in such exercise, and the conclusion argued that any sale was within the power granted. With respect to the two disputed mortgages it has been found as a fact that the mortgagee had the means of know-ing, and therefore knew, that the money to be raised thereby was intended for use and was used in the conduct of the busi-ness of the testator by his widow; and was not therefore for the purpose of paying the testator's debts, or for any purpose of his estate, and it is accordingly concluded that such mortgages le-gally bound no more than the life interest of the mortgagor.

The respondent, William Lewis, and those to whom he as-signed and who now hold the two mortgages invoked in behalf of their validity the agreement of those interested in remain-der, dated November 30, 1888. The facts found with respect to it lead to but one just conclusion, that it was very reluctantly executed by those in whose power it was to give validity to the otherwise invalid mortgage, and upon the assurance (or threat it may be) of the mortgagee that he would otherwise foreclose, and the pleading of their mother; but they intelligently knew the effect of what they were asked to do; they had the advice of counsel, and, excepting Eva Steinmetz, the granddaughter of the mortgagor, they were sui juris. That the consideration of the agreement was a valuable one was scarcely questioned, and it could not be successfully, for it contemplated the release from the lien of the mortgages of all the property mentioned in it, excepting that on Ridge avenue and Hamilton street, and the effort to prevent sheriff's sale of the property under the first liens upon it. It is determined, therefore, that by the said agreement all those who were parties to it, and, sui juris, were bound by its provisions, and that the mortgages referred to were as to principal and interest declared valid by those in remainder.

Although Annabelle Steinmetz executed the agreement as guardian for her daughter Eva, she was not in fact such guar-dian, and her execution was without any force and effect to bind the estate and interest of her minor child.

On behalf of the complainant it was argued that there had happened a failure of the consideration of this agreement, and hence that it was without legal effect, and in support of this contention it was said that the agreement to release was noth-

ing substantial, inasmuch as the mortgages were invalid, and that sales of the property did take place within less than six months from November 30, 1888. But an agreement to release from what may ultimately be decided to be a voidable lien is a contract looking to the abatement of possible litigation and to repose, and as such, both substantial and valid as a consideration. And although sales of the real property did take place within less than six months from November 30, 1888, they were sales at auction, and were not had by the sheriff, excepting one, which were the sort of sales that Lewis, by his agreement, had undertaken to provide against, and which are generally believed · to produce a less price than sales otherwise conducted. It has been found that Lewis did release from the lien of the mortgages, as the property covered by them was sold, and that by sales under his direction, and at auction, he did prevent those of the same property by the sheriff, and hence it is that not only was the thing agreed to be done by him under the agreement of November 30, 1888, a thing of value, but the subject of the consideration was, in fact, carried out.

On behalf of Maria E. Neall and Emma Steinmetz, it was said that the mortgages in dispute were paid, and a calculation, beginning February 12, 1889, and ending April 20, 1895, to that end was exhibited. Although this is not made the subject of pleading, and is not strictly in issue, the evidence upon which the calculation was based and the course taken with respect to it was not, however, the subject of objection, and, therefore (but with some doubt of the propriety), it is considered. It is to be observed that the $1,000 mortgage was assigned by Lewis, November 11, 1880, and that for $3,000 on November 6, 1889, and as has been found neither assignee sought for nor obtained the usual declaration from the mortgagor of no set-off by way of defense, and hence each stands in the same legal position that the mortgagee held at the time of the assignment, and such defense as might then be made by the mortgagor against him as of that date may be made against his assignees.

It has been found that Lewis paid as assignee for the benefit of creditors all of the moneys which came into his hands from the sales of real and personal property; and it is by excluding from the calculation referred to all payments excepting such as legally appertained to the real estate, and by calculations of in-

terest upon the balances so resulting, that it was made to appear that he had, prior to the filing of the bill, a sum in hand which would suffice to pay the mortgages. It was sought to justify this method of calculation by the argument that Lewis as such assignee had the life estate of Margaret Steinmetz and was bound, as she was bound, out of its income or proceeds, to pay rents, interest, etc., only, and was without authority to pay the debts incurred by her—an argument that cannot be successfully assailed. But there is omitted the fact that subsequently to the assignment and by a clause of the agreement of November 30, 1888, Lewis asserted and the clause seemingly conceded his right to act as he might be advised; and in response to the allegation of paragraph eighteen of the bill, it was answered that Mr. Glenn, as attorney for the heirs, expressed his willingness that the proceeds of the real estate be devoted by Lewis to the payment of creditors of Margaret Steinmetz, and that the consideration of this arrangement was the payment by Lewis, as assignee, of the proceeds of personal property to the discharge of the interest on the mortgage at Ridge avenue and Hamilton street, at the request of the heirs, to save it from foreclosure sale; a payment which otherwise would not have been warranted, and accordingly Lewis was advised thus to pay. M. E. Neall and Emma Steinmetz (the heirs who were examined) denied that Mr. Glenn had been authorized to act for them, but that they did not deny that such an arrangement as the answer alleged existed, did not deny that the consideration of it was as the answer alleged, nor deny that the interest had been paid as averred. The force of the responsive answer in this behalf remains, and whether or not the heirs authorized Mr. Glenn to make for them the arrangement he did, that arrangement was carried out and upon the consideration named; they received and retained its benefit, and they cannot, therefore, be heard to repudiate the arrangement. Hence the argument aforesaid on their behalf should not prevail; and it is concluded that Lewis, having expended the said moneys in the payment, as well of the obligations of the real estate as those of Margaret Steinmetz, cannot be made to account by excluding therefrom the latter. It is due to Mr. Glenn to say that he had ground to suppose he was acting for all the heirs; he was retained by Charles W. Steinmetz, one of them, and by Dr. Numbers, the husband of another, and they told him they were acting for all of the heirs.

Mr. Glenn since December, 1891, has collected the rents of the realty of estate which remained unsold until the rights of the parties in interest should be legally determined. He has paid interest and charges up to the filing of the bill, August 24, 1895, his last payment of interest on the disputed mortgages being made March 18, 1895. His payments of interest were objected to from time to time by Mr. Megargee, representing the guardian of Eva Steinmetz, and Mr. Burton, representing M. E. Neall and Ella Steinmetz; but, being threatened by the holders of the mortgage with suit, he paid as stated. Since the filing of the bill no interest has been paid, and there was no evidence of the surplus in his hands, so that so much of it as is distributable to the guardian cannot be decreed as otherwise it would be.

It has been found that on April 27, 1889, there was in the hands of William Lewis a balance of $2,253.58 from the sales of real estate, which, with interest to the date hereof, January 27, 1898, amounts to $3,424.78. Eva Steinmetz, as the only child of her intestate father, to whom was devised a sixth of the residuary estate, is entitled to that share, subject to the one third of it for the life of her mother, Annabelle Steinmetz.

The case submitted having been decided upon the findings and reasoning stated, the formal determination of the referee is: that Eva Steinmetz is entitled to one sixth of the real estate, the subject of the two mortgages now held by Anna V. Lewis and Arthur T. Bending, divested of their lien, in the one third of which one sixth her mother, Annabelle, has a life estate, that Eva Steinmetz is also entitled to one sixth of $3,424.75 above mentioned, subject to the one-third interest thereof, the property of her mother for life ; that none of the other parties to the litigation are entitled to a decree in their behalf.

The heirs of Adam Steinmetz, deceased (excepting Eva Steinmetz), having failed in their contention that the covenant executed by them November 30, 1888, was invalid ; and William Lewis having also failed to maintain the contention of his answer with respect to the powers conferred by the will of Adam Steinmetz, deceased, upon his widow, and also with respect to the interest of Eva Steinmetz, entailing thereby the exhibition of much of the evidence, it is deemed equitable that there should be an apportionment of the costs of the case, and that one fourth

should be borne by the heirs (other than Eva Steinmetz) and three fourths by William Lewis seems proper and just.

In accordance with the foregoing the following form of decree is suggested:

And now,            1898, upon consideration of the report, the exceptions thereto and the report upon the exceptions, and after the agreement of counsel for the respective parties, it is ordered and decreed: that William Lewis pay to J. E. M. Kellar guardian of the estate of Eva Steinmetz, a minor, the sum of $570.79 to be held subject with respect to one third for the life estate of Annabelle Steinmetz; that Eva Steinmetz is entitled to the one-sixth undivided interest (subject to the estate of Annabelle in one third thereof for life) in the real estate described in the two mortgages executed April 14, 1888, and September 18, 1886, and now held by Anna V. Lewis and Arthur T. Bending; that Anna V. Lewis and Arthur T. Bending are each entitled to the moneys secured by their respective mortgages, but each is enjoined from proceeding to recover the same by a judicial or other sale of the mortgaged lands until one undivided sixth shall be released to Eva Steinmetz, a minor; that after taxation one fourth of the costs shall be paid by Charles W. Steinmetz, Maria Elizabeth Neall, Emma Steinmetz, Mary Numbers, Emma E. Steinmetz, Ella Steinmetz and Levi E. Steinmetz, and three fourths thereof by William Lewis.

Exceptions to the referee's report were overruled, and a decree entered in accordance with his report.

*Errors assigned* were in overruling exceptions to the auditor's report.

*Arthur M. Burton* and *George S. Graham*, for appellants.— As it was the life tenant's duty, so it was Lewis's duty, as her assignee, subject to the trusts, to keep down incumbrances and protect the interests of the remainder-men. A tenant for life is a quasi-trustee: Perry on Trusts, sec. 540; Frank's Est., 38 Pitts. L. J. 190.

An assignee for the benefit of creditors is the mere representative of his assignor, enjoying his rights only, and is bound where he would be bound: Morris's App., 88 Pa. 368; Wright v. Wigton, 84 Pa. 163.

Contracts are set aside in equity for force exciting apprehension short of the duress of the common law: Central Bank v. Copeland, 18 Md. 305; Davis v. Luster, 64 Mo. 43; Brown v. Peck, 2 Wis. 261.

Circumstances, also, of extreme necessity and distress of the party, although not accompanied by any direct restraint or duress, may, in like manner, so entirely overcome his free agency as to justify the court in setting aside a contract made by him, on account of some oppression or fraudulent advantage, or imposition attendant upon it: 1 Story's Eq. Jur. sec. 239.

If a trustee, mortgagee, tenant for life or purchaser get an advantage by possession, he shall not use it for his own benefit: Holridge v. Gillespie, 2 Johns. Chan. Rep. 30; Morgan v. Boone, 4 T. B. Monroe, 298; 1 Wharton on Contracts, sec. 16; Tate v. Williamson, L. R. 1 Eq. Cases, 528; Taylor v. Taylor, 8 Howard (U. S.), 183; Friend v. Lamb, 152 Pa. 529.

*Sheldon Potter*, with him *E. A. Miller* and *Leoni Melick*, for appellees, cited Gump's Est., 13 Phila. 495; John's Est., 14 Phila. 623; Kleckner's Est., 150 Pa. 519.

*Eugene C. Bonniwell*, for Annabelle Steinmetz.

PER CURIAM, April 3, 1899:

Our consideration of this record has not convinced us that there is any error therein of which the appellants, or either of them, have any just reason to complain. All questions necessarily involved appear to have been most carefully and elaborately considered and satisfactorily disposed of by the learned referee, whose report was approved by the court below. We find no substantial error in any of his rulings, findings of fact, or legal conclusions. It therefore follows that the court below committed no error in dismissing the exceptions to the referee's report and confirming the same. On that report the decree is affirmed and appeal dismissed at appellants' costs.